## Appeal of A. L. ENGLANDER.     Docket No. 802.

Salary credited to an employee on the books of a corporation is not taxable income unless it is available for the use of such employee.

Acceptance by an employee of no par value shares of stock of a corporation that have no market value, in consideration for settlement of amounts credited to such employee on the books of the corporation for unpaid salary and for cash advanced to the corporation does not result in taxable income to the employee unless such shares have been converted into cash or are shown to have a market value.

Submitted January 29, 1925; decided March 16, 1925.

*G. C. Keeley* and *E. W. LeFever, Esqs.*, for the taxpayer.

*B. G. Simpich, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, LITTLETON, and SMITH.

From the oral and documentary evidence presented at the hearing the Board makes the following

### FINDINGS OF FACT.

1. A. L. Englander, hereinafter referred to as the taxpayer, is an individual residing in Cleveland, Ohio. During the years 1919, 1920, and 1921, he was the president and general manager of the A. L. Englander Motor Co., hereinafter referred to as the corporation, which was engaged in the business of selling new and used automobiles and trucks. The taxpayer owned more of the stock of the corporation than any other stockholder.

2. The taxpayer kept his personal accounts on the cash receipts and disbursements basis. Those of the corporation were kept on the accrual basis. Such methods of accounting were used by the taxpayer and the corporation, respectively, not only for the years 1919, 1920, and 1921, but also for some years theretofore and thereafter.

3. The annual salary of the taxpayer was fixed at the beginning of each year by agreement between himself and the board of directors of the corporation, but it was agreed that the taxpayer would draw on his salary account only as funds were actually available therefor. In conformity with such agreement the taxpayer actually drew as salary the amounts of $15,288.85, $11,571.69, and $11,200 for the years 1919, 1920, and 1921, respectively, and so reported in his income-tax returns for such years. The corporation credited the taxpayer on its books of account with the amounts of $30,000, $20,000, and $15,833.33, respectively, for the years in question, and deducted the amounts so credited from its gross income for such years in making its Federal income-tax returns.

4. The taxpayer never received any part of the difference between the amounts credited to him by the corporation as salary and the amounts actually paid to him during the years in question. Pursuant to the agreement above mentioned, the corporation credited to the taxpayer on its books, for salary and advances from time to time made by the taxpayer, the cumulative amounts of $24,471.51, $39,296.84, and $48,000.15, respectively, in the years 1919, 1920, and 1921.

5. The corporation was a heavy borrower from banks. It also had a very large contingent liability which did not appear on its books but was well known to the bankers on whom it relied for financial accommodations. This contingent liability resulted from the endorsement of notes received by it in part payment for automobiles and trucks sold to its customers when such notes were discounted by banks or other credit agencies. The total of such contingent liabilities often exceeded $100,000. By reason of the growing volume of its actual and contingent liabilities it became increasingly difficult for the corporation to borrow any more money from the banks or to secure operating funds from other sources. In these conditions it was necessary to adopt a new financing plan to restore its credit and prevent liquidation for the benefit of its creditors.

6. As a result of the business crisis that became acute in 1921, and solely to permit the corporation to clear its books of large direct liabilities and thereby enable it to make a better financial statement as a basis for additional credit, the taxpayer advanced $25,000 to the corporation and in that year charged off such advance, together with his unpaid salary credits and other advances theretofore made, in the total amount of $48,000.15. As his only consideration for so charging off the amounts credited to him by the corporation on account of unpaid salary and cash advanced, the taxpayer received in 1921 shares of the common capital stock of the corporation, issued without par value. He still holds all the stock so accepted by him. No dividends have ever been paid on the stock nor has it ever had any market value.

7. The amounts credited to the taxpayer on the books of the corporation as salary in excess of the amounts actually received by him during the years 1919, 1920, and 1921, were never available for the use of the taxpayer. The corporation never set up any reserve against such unpaid salary accounts, nor did it segregate any part of its assets to be used for the payment of such accounts.

8. Upon audit of the taxpayer's income-tax returns for 1919, 1920, and 1921, the Commissioner held that the amounts credited to the taxpayer by the corporation as salary for the years in question in excess of the amounts actually paid to the taxpayer were constructively paid to him and should have been included in the computation of his taxable income for the years 1919, 1920, and 1921. Based on this ruling the Commissioner determined additional tax liability of the taxpayer in the amount of $4,146.67, and so notified him in a deficiency letter dated October 3, 1924, and from that determination the taxpayer took this appeal.

#### DECISION.

The deficiency determined by the Commissioner is disallowed.

#### OPINION.

LANSDON: Two questions raised by this appeal must be determined by the Board: (1) Whether balances of salary credited to an employee of a corporation but not paid or made available for the use of such employee are taxable income; and (2) whether receipt by the employee of non-par value shares of capital stock without market value

shall be regarded as taxable income? The first issue is controlled, in principle, by the decision of the Board in the *Appeal of H. C. Couch*, 1 B. T. A. 103.

From the evidence adduced at the hearing, the Board is of the opinion that the credits to the taxpayer on the books of the corporation for undrawn salary balances were never available for his use. The taxpayer had agreed to draw only such part of his stated salary as could be paid by the corporation without interfering with its operations or impairing its credit. Although not insolvent on the face of its books, the corporation had large expenses and very heavy immediate and contingent liabilities, and, at no time during the years in question, did it have funds sufficient to permit payment of the amounts due the taxpayer without serious embarrassment and danger of bankruptcy.

Except certain shares of no-par value stock of the corporation, the taxpayer has received nothing on account of the amounts due him. He has never been able to draw against his credits for any purpose, nor in any other way has he had use, benefit or gain from them. In these conditions the Board holds that the credits to the account of the taxpayer on the books of the corporation, in excess of compensation actually paid, were not income and are not taxable.

The evidence proves that none of the shares of stock accepted by the taxpayer was converted or convertible into cash and that at no time since their issue have such shares been traded in or had market value. The exchange of the book credits to the taxpayer's account for stock took place in 1921. The shares of stock not having a readily realizable market value, the exchange was within the exception provided in section 202(c) of the Revenue Act of 1921. In the light of these facts and of the above cited statutory provision, the Board holds that the no-par value shares of common stock of the corporation can not be regarded as income in determining the tax liability of the taxpayer for 1921.